IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK DAVID FRANKEL | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE DISCIPLINARY BOARD | : | |
| OF THE SUPREME COURT | : | NO. 05-CV-01450 |
| OF PENNSYLVANIA, et.al., | : | |
|     Defendants. | : | |

MEMORANDUM

LEGROME D. DAVIS, J.                                                                                              APRIL 27, 2006

Presently before this Court is Defendant Patti S. Bednarik's Motion for Summary Judgment (Doc. No. 25), Plaintiff's Response thereto (Doc. No. 28), Defendant Bednarik's Supplemental Motion for Summary Judgment (Doc. No. 30) and Plaintiff's Brief Contra (Doc. No. 31). For the reasons set forth below, Defendant Bednarik's Motion for Summary Judgment is GRANTED.

I.    PROCEDURAL HISTORY

On March 29, 2005, plaintiff, a disbarred attorney appearing pro se, commenced this action against the Supreme Court of Pennsylvania, the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board"), Patti W. Bednarik, Esq. and Edwin R. Frownfelter, Esq., alleging that defendants violated his 14th Amendment rights during the disciplinary proceedings that resulted in his disbarment. Compl. ¶ 9. On April 5, 2005, this Court sua sponte dismissed

plaintiff's claims against the Supreme Court of Pennsylvania.[1]  On November 8, 2005, this Court granted Defendants' Motion to Dismiss in part, finding that Eleventh Amendment immunity applied to plaintiff's claims for damages against Defendant Disciplinary Board and Defendants Bednarik and Frownfelter in their official capacities, that quasi-judicial immunity applied to plaintiff's claims for damages against the members of the Disciplinary Board, and that prosecutorial immunity applied to plaintiff's claims against Defendant Frownfelter in his individual capacity.

In addition, this Court found that plaintiff's allegations that Defendant Bednarik knowingly and intentionally misstated and misrepresented evidence, referenced information not in evidence and took actions that were designed to malign and cause harm to plaintiff during hearings and in pleadings were part of Defendant Bednarik's presentation of her case against plaintiff and, therefore, were protected by prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  This Court also found that "a limited factual inquiry" was necessary to determine whether prosecutorial immunity applied to plaintiff's claim that Defendant Bednarik "made misrepresentations to and threatened witnesses and potential witnesses." See Forsyth v. Kleindienst, 599 F.2d 1203, 1215 (3d Cir. 1979).  This claim is now before the Court.

II.    FACTUAL BACKGROUND

Defendant Bednarik is Disciplinary Counsel for the Disciplinary Board of the Supreme Court of Pennsylvania. Def. Bednarik's Mot., Ex. PSB-1 ("Bednarik Aff.") ¶¶ 1, 8.  She has the "power and duty to investigate and prosecute all matters involving alleged misconduct" called to

---

[1] The Court dismissed all of plaintiff's claims; however, upon reconsideration, the Court reinstated the claims against the Disciplinary Board, Bednarik and Frownfelter. See Doc. No. 5.

her attention by complaint or otherwise. Id. ¶ 8. On February 25, 2000, the Office of Disciplinary Counsel received a complaint regarding plaintiff. Id. ¶ 10. On March 21, 2000 and on April 23, 2002, the Office of Disciplinary Counsel received two additional complaints. Id. As a result of the complaints, Defendant Bednarik conducted telephone interviews with the individuals who made the complaints as well as with other people who had firsthand or personal knowledge of the complaints. Id. ¶ 11. She avers that at no time did she make misrepresentations to, threaten or intimidate witnesses or potential witnesses. Id. ¶¶ 18, 19.

Plaintiff provides an affidavit from Robert Fisher, dated April 18, 2002, and an affidavit from Brian Merriken, dated April 2, 2002, setting forth the specific allegations against Defendant Bednarik. See Pl's Ans., Ex. A ("Fisher Aff."), Ex. B ("Merriken Aff."). Robert Fisher avers that Defendant Bednarik called him to discuss complaints made against plaintiff, but he told her that he had nothing to add to her investigation. Fisher Aff. ¶ 1. Even though she was asked not to call again, Defendant Bednarik called to see whether Mr. Fisher had changed his mind. Id. ¶ 3. According to Mr. Fisher, Defendant Bednarik implied that something inappropriate had happened, treated him as if he were lying, and was very aggressive in her questioning, like she was trying to get Mr. Fisher to say something that was not true. Id. ¶¶ 2, 5-7.

Brian Merriken's affidavit contains similar averments. See Merriken Aff. Mr. Merriken avers that he repeatedly told Defendant Bednarik that he had nothing to add to her investigation. Id. ¶¶ 1, 2. Defendant Bednarik told Mr. Merriken that Tammy Orewiler gave his name to her. Id. ¶ 5. Mr. Merriken believed that Defendant Bednarik thought he was lying and that she needed his help to win her case. Id. ¶¶ 7, 8. According to Mr. Merriken, Defendant Bednarik implied that plaintiff had something to do with the death of a boy who lived in an apartment

owned by plaintiff. Id., Addendum.

III.     LEGAL STANDARD

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). All reasonable inferences from the record are drawn in favor of the non-movant.  See Anderson, 477 U.S. at 255; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921 (1991).  "[R]eview of a summary judgment motion seeks to determine whether, viewing the evidence in the light most favorable to plaintiff, no genuine issue of material fact about immunity remains for trial." Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).

IV.     DISCUSSION

Prosecutors are subject to varying levels of immunity. Kulwicki, 969 F.2d at 1463; see also Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994).  Absolute immunity attaches to all actions performed in a "quasi-judicial" role, which includes all activity taken while in court, such as the presentation of evidence or legal argument, as well as out-of-court behavior "intimately associated with the judicial phases" of litigation. Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Kulwicki, 969 F.2d at 1463.  Acts "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v.

4

Fitzsimmons, 509 U.S. 259, 272 (1993).  Immunity extends to "the preparation necessary to present a case," including "obtaining, reviewing, and evaluation of evidence." Kulwicki, 969 F.2d at 1465 (quoting Schrob v. Catterson, 948 F.2d 1402, 1414 (3d Cir. 1991)).  The prosecutor has the burden of establishing that she was acting as an advocate. Buckley, 509 U.S. at 273.  A prosecutor acting in an investigative or administrative capacity is protected by qualified immunity.  Imbler, 424 U.S. at 430-31; see also Kulwicki, 969 F.2d at 1463.

In determining whether absolute immunity or qualified immunity applies to particular actions, the Supreme Court has applied a "functional approach," which looks to the nature of the function performed. Buckley, 509 U.S. at 269.  The Supreme Court notes that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as [she] prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." Id. at 273.  When a prosecutor performs the investigative functions normally performed by a detective or police officer, "it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."[2] Id.

The line between quasi-judicial and investigative activity is "far from clear." Kulwicki, 969 F.2d at 1465.  In Kulwicki, the Third Circuit acknowledged that, while the filing of a

---

[2] Defendant Bednarik repeatedly states that she has the duty to investigate all matters that involve alleged attorney misconduct and, therefore, prosecutorial immunity should apply. Def. Bednarik's Memo. at 5, 6, 8; see also Def. Bednarik's Supp. Memo. at 5.  This Court does not dispute that investigation of alleged attorney misconduct falls within Defendant Bednarik's duties.  However, the inquiry focuses on the conduct for which immunity is claimed, not the whether the actions fall within the prosecutor's duties. See Buckley, 509 U.S. at 271; Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (noting that this point is "best illustrated" by the fact that the Attorney General is protected only by qualified rather than absolute immunity when engaged in the performance of national defense functions rather than prosecutorial functions).

complaint is not a foolproof measure of the commencement of "quasi-judicial" activity, it is important in the determination. Id. at 1466.  In Kulwicki, the prosecutor questioned witnesses two weeks before the criminal complaint was filed. Id.  This fact, in combination with the fact that the witnesses initiated contact with the District Attorney's office in order to complain about another individual, "point[ed] away from purely prosecutorial activity." Id.  The Third Circuit found that, even though the prosecutor mentioned that he planned to press charges during the interview, the allegations pointed more to investigation than prosecution and, as a result, absolute prosecutorial immunity did not apply. Id.

In the instant matter, the Office of Disciplinary Counsel filed a Petition for Discipline against plaintiff on December 3, 2001.[3] Def. Bednarik's Mot., Ex. PSB-2 at 1.  A second Petition for Discipline was filed on July 31, 2002. Id.  In his affidavit, Mr. Merriken states that Defendant Bednarik initially called him "after the first of the year," presumably January 1, 2002, as his affidavit was filed on April 2, 2002. Merriken Aff. ¶ 1.  Therefore, Defendant Bednarik's questioning of Mr. Merriken occurred after the first petition was filed, but before the second petition was filed.  While the questions Defendant Bednarik asked Mr. Merriken could support a finding that she was investigating whether Mr. Merriken had a potential complaint against plaintiff and not acting in her role as an advocate "evaluating evidence" in preparation for trial, the nature of the complaints against plaintiff were such that evidence of other misconduct was necessary to establish that plaintiff engaged in a common plan or scheme under Pa.R.D.E. 404(b)(2).  See Def. Bednarik's Mot., Ex. PSB-2 at 2.  Therefore, this Court finds that Defendant

---

[3] The Petition charged plaintiff with violations of the Rules of Professional Conduct based on allegations that he engaged in inappropriate contact with two clients. Def. Bednarik's Mot., Ex. PSB-2 at 1.

Bednarik's questioning of Mr. Merriken was "quasi-judicial" activity that occurred in her role as an advocate. As a result, absolute prosecutorial immunity applies.

Mr. Fisher, in his affidavit, does not indicate when the telephone interviews with Defendant Bednarik occurred; however, he notes that Defendant Bednarik told him that others had made complaints about plaintiff.[4] See Fisher Aff. This Court is unable to determine from the information before it whether these interviews occurred while Defendant Bednarik was investigating the initial complaint, while she was preparing for the initiation of judicial proceedings, or while she was preparing to present her case. Therefore, this Court finds that Defendant Bednarik has not met her burden of establishing that she was working as an advocate, rather than an investigator, when questioning Mr. Fisher. See Buckley, 509 U.S. at 273; see also Burns v. Reed, 500 U.S. 478, 486-87 (1991) (holding that the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties).

Defendant Bednarik argues, in the alternative, that her actions are protected by qualified immunity. See Def. Bednarik's Supp. Memo. at 1-5. This Court agrees. Under qualified immunity, a prosecutor is "shielded from liability" if her conduct does not violate clearly established constitutional rights of which a reasonable person would have known.[5] Schrob, 948 F.2d at 1420. Defendant Bednarik's questioning of Mr. Fisher, which, at most, could be perceived as aggressive, does not amount to a violation of plaintiff's constitutional rights. The Constitution is not offended by a prosecutor investigating a claim. Therefore, this Court finds

---

[4] The first complaint against plaintiff was filed on February 25, 2000.

[5] Plaintiff alleges that Defendant Bednarik violated his Fourteenth Amendment rights.

that Defendant Bednarik is protected by qualified immunity with regard to the questioning of Mr. Fisher.[6]

V.   CONCLUSION

Accordingly, this Court grants Defendant Bednarik's Motion for Summary Judgment. An appropriate order follows.

---

[6] Plaintiff argues that Defendant Bednarik's conduct "has not yet been wholly identified" and that he should have the opportunity to conduct discovery to show that Defendant Bednarik violated his constitutional rights. Pl's Brief Contra at 3-7. Any questioning of witnesses or potential witnesses conducted by Defendant Bednarik in her role as an advocate would be protected by absolute prosecutorial immunity. Since plaintiff has not alleged anything that amounts to a constitutional violation, any questioning of witnesses or potential witnesses that occurred in a purely investigative capacity would be protected by qualified immunity.